**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KELLI RENEE BARRETT FITCH, | } | |
| *Plaintiff(s)* | } | |
| | } | |
| v. | } | CIVIL ACTION NO. H-03-1686 |
| | } | |
| NORMAN D. MORROW, in his | } | |
| individual capacity, | } | |
| *Defendant(s)* | } | |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is Defendant Norman Morrow's motion for summary judgment (Doc. 24).  For the reasons set forth below, the Court **ORDERS** that the motion is **GRANTED**. Final judgment is entered in favor of Defendant.

**I.      BACKGROUND AND RELEVANT FACTS**

This is a § 1983 action in which the Plaintiff alleges that the Defendant, a deputy sheriff, acted unreasonably when he drafted and submitted an application for an arrest warrant that ultimately led to her wrongful arrest.  The Defendant did not conduct the initial investigation underlying the arrest warrant, nor did he execute the warrant, which a magistrate independently reviewed and issued and which other officers in his department eventually executed.  Plaintiff's central complaint is that the Defendant acted unreasonably and / or negligently when he (1) mistakenly assumed, on the basis of a computer database search that yielded close similarities in name and physical description, that Plaintiff was the same person as the suspect identified in the offense report underlying the arrest; and (2) failed to disclose the discrepancies between Plaintiff's file in the computer database and the details in the offense report (*i.e.*, slight difference in name spelling, different street address, height difference) in the probable cause affidavit

submitted to the magistrate who issued the arrest warrant.  Plaintiff asserts a Fourth Amendment violation and seeks damages.  Defendant asserts that he is entitled to qualified immunity and in particular that the "breaks the chain of causation" principle[1] applies in this case.

Plaintiff Kelli Renee Barrett Fitch ("Fitch") was arrested on or about 30 April 2001 at her home in Katy, Texas by officers executing a warrant charging her with felony burglary.  Fitch was placed in handcuffs, transported to the Harris County jail, and held in confinement for several days until arraigned and allowed to post bond for her release.  Fitch alleges that the facts leading up to her arrest are as follows.[2]

On November 15, 2000 Deputy D.L. Shinneman of the Harris County Sheriff's Department ("Shinneman") was dispatched to a "Public Storage" facility in Houston, Texas, in response to a reported "burglary of a building."  Shortly after his arrival Shinneman spoke to Debbie Parks ("Parks"), who was then employed as a property manager at the "Public Storage" facility.  Parks told Shinneman that she had seen two individuals leave the facility earlier in the day with two dark brown chairs in their vehicle.  Parks stated that she personally knew these individuals by name and by sight as Jesse Salazar and **Kelly Barrett**.  Although Salazar had rented a storage unit at the facility, Parks stated that she had previously become suspicious of both Salazar and Kelly Barrett because they had never moved any personal property into the storage unit Salazar had rented; because they never used their assigned "gate code" when entering or leaving the premises (but had instead followed other vehicles in and out while the gate was still open); and because other tenants had reported property missing after Salazar and Kelly Barrett had been on the premises.  Parks further informed Shinneman that Salazar had

---

[1] *See Murray v. Earle*, 405 F.3d 278, 290-93 (5th Cir. 2005) (discussing the "breaks the chain of causation" principle and its development and continuing viability in the Fifth Circuit).
[2] The factual summary set forth below is taken largely from the allegations in *Plaintiff's Third Amended Complaint* (Doc. 12).  The Court agrees with Plaintiff that "[t]o a large extent the facts alleged by Plaintiff are undisputed by Defendant Morrow." Doc. 29 at 34.

executed a written storage rental agreement for a single unit at the Public Storage facility. During her discussions with Shinneman on November 15, 2000, Parks retrieved that storage rental agreement for Shinneman's examination.

The information contained in the written storage rental agreement executed by Salazar, dated October 16, 2000, disclosed that Salazar had rented a single unit at the Public Storage facility, Unit "A113". When providing his "contact" information on the rental agreement, Salazar identified "5400 W. MT Houston TX 77040" as his address, and "(713) 687-1492" as his telephone number. In accordance with Public Storage's policy, Salazar, as a tenant, had also been required to execute a "Tenant Information Sheet" and identify the name and address of an "alternate contact". On the written rental agreement itself, as his "alternate contact", Salazar had provided the name "**Kelly Barrett**", with the address "**11716 Clarkston #C, Katy, Texas 77429**", along with the telephone number "(281) 624-6597". Both Salazar, and one "Pat McGrew", who was a property manager at Public Storage, signed the rental agreement.

Based on the foregoing disclosures by Parks, at 1:15 p.m. on November 15, 2000, Shinneman typed and entered into a computer a "Detail Report for Harris County Law Enforcement", including a "narrative" of what he had discovered in connection with his dispatch and investigation of the theft at the Public Storage facility. In his initial narrative, among other information, Shinneman reported that "MRS. PARKS ADVISED THAT THE SUSPECTS (JESSE SALAZAR/_____) WERE SEEN LEAVING THE STORAGE COMPLEX THIS MORNING." In a subsequent narrative entered into the computer immediately thereafter, Shinneman amended his report to state that "MRS. PARKS ADVISED THAT THE SUSPECTS (JESSE SALAZAR/ *KELLEY* BARRETT) WERE SEEN LEAVING THE STORAGE COMPLEX THIS MORNING." (italics added). On a separate page of his written report,

3

Shinneman identified Salazar as a suspect in the Public Storage facility theft as: "JESSE F. SALAZAR", with the address "5400 W. MT HOUSTON TX 77040", with the date of birth "053171", and Texas Driver's License Number "13321980". As for his second suspect, Shinneman identified "Kelly Barrett" as: "*KELLEY* BARRETT", with the address "11716 CLARKSTON KATY TX 77429", and did not include anywhere in his written report either a "date of birth" or "Driver's License Number" for "*KELLEY* BARRETT". Finally, in his narrative report entered on the computer, Shinneman clearly noted that "PARKS STATED THAT SHE IS ABLE TO IDENTIFY THE SUSPECTS BY SITE [sic]." On November 17, 2000, Shinneman's final report entries were "approved", and a "case approval" was entered into the computer by, "RUGGIERO, S.D."

Some time during the two weeks after the entry of Shinneman's "Detail Report for Harris County Law Enforcement" into the computer, Defendant Norman D. Morrow ("Morrow") was assigned to investigate the theft at the Public Storage facility described above.  It is the manner in which Morrow conducted his investigation and applied for an arrest warrant that constitutes the basis of Plaintiff's lawsuit.  According to Plaintiff:

> …[W]hen Defendant Morrow attempted to discover additional identifying information for the suspect "Kelly Barrett" (as identified by the Public Storage records, including the rental agreement and "Tenant Information Sheet"), and/or "Kelley Barrett" (as identified by Shinneman in his written report entered on the computer), Morrow became frustrated with the lack [of] information available in Shinneman's reports. Being uncertain at this time as to the correct name for his suspect, "Kelly" or "Kelley" Barrett, Defendant Morrow thereupon resorted to use of a computer database with a search engine, such as "Soundex" or some similar device, that is programmed so that when used it returns not merely identifying information for a particular person whose name is accurately spelled out, or even a list of multiple persons whose names are spelled identically, but also includes in its return a list, with accompanying information, for all persons, in an *idem sonans* fashion, that have names that are phonetically similar.

> Due to the nature of the computer generated search conducted by Defendant Morrow, and due in part to the size of the population of Harris County, Texas,

4

which the United States Census Bureau enumerated at 3, 400, 578 in the year 2000, Defendant Morrow was then confronted with the names and accompanying identifying information for a large number of persons, any of whom might possibly have been the target of his investigation. However, none of the names listed in Defendant Morrow's computer generated search matched the information provided by Parks and Shinneman, which identified the intended suspect as "Kelly Barrett" or "Kelley Barrett", respectively. Nor did any of the information associated with the names listed in Defendant Morrow's computer generated search match the address for "Kelly" or "Kelley" Barrett given by both Parks and Shinneman, that is: "11716 Clarkston #C, Katy, Texas 77429".

   After closer examination of his computer generated search results however, and while uncertain whether either of the names with which he had been provided by Shinneman and Parks were the correct name for his suspect, Defendant Morrow did discover the name of one "Kelli Renee Barrett", who was listed as living at a residential address in the City of Katy, Texas. The Greater City of Katy has an area of 180 square miles, and has a population in excess of 164,000 people. Although Defendant Morrow noted that the address for "Kelli Renee Barrett" was listed in his computer generated search as having a completely different street address than "11716 Clarkston #C, Katy, Texas 77429", and that the only commonality between the information he possessed for "Kelly Barrett" and "Kelli Renee Barrett" was that both were listed as residing in the City of Katy; Defendant Morrow, without any further investigation, and based solely on this computer generated search result, arbitrarily decided that the Plaintiff, "Kelli Renee Barrett", was the true target of his investigation.[3]

On December 1, 2000, Defendant Morrow prepared and presented to a Harris County, Texas magistrate an application for a felony arrest warrant, along with an accompanying affidavit which he had sworn out.  Morrow's affidavit stated:

## PROBABLE CAUSE

AFFIANT N.D. MORROW, IS EMPLOYED AS A PEACE OFFICER WITH THE HARRIS COUNTY SHERIFF'S DEPARTMENT. AFFIANT BELIEVES AND HAS REASON TO BELIEVE THAT THE DEFENDANTS, KELLI RENEE BARRETT, AND JUAN FRANSISCO SALAZAR, COMMITTED THE OFFENSE OF FELONY THEFT ON OR ABOUT NOVEMBER 15, 2000 IN HARRIS COUNTY, TEXAS.

AFFIANT SPOKE TO WITNESS, DEBBI PARKS, WHO KNOWS BOTH DEFENDANTS BY SIGHT AND BY NAME AS TENANTS AT THE PUBLIC STORAGE WAREHOUSE LOCATED AT 6456 NORTH HIGHWAY 6 IN HARRIS COUNTY, TEXAS, WHERE THE WITNESS IS EMPLOYED AS A

---

[3]     *Id.* at 6-7.

MANAGER. WITNESS TOLD AFFIANT THAT DEFENDANT JUAN
SALAZAR HAD RENTED STORAGE SPACE AT HER LOCATION AND
HAD LISTED DEFENDANT KELLI BARRETT AS THE PERSON
AUTHORIZED TO ENTER AND USE THE SPACE, BUT HAD NEVER
MOVED ANY PROPERTY INTO THE SPACE. THE WITNESS TOLD
AFFIANT THAT SHE HAD SEEN BOTH DEFENDANTS ON THE
PROPERTY SEVERAL TIMES IN VARIOUS LOCATIONS WHERE THEY
WERE NOT AUTHORIZED TO BE AND SHE HAD CAUTIONED THEM
NOT TO WANDER AROUND THE PROPERTY.

ON NOVEMBER 15, 2000, THE WITNESS WAS ENTERING THE
PROPERTY THROUGH THE SECURITY GATE WHEN SHE SAW A PICK
UP TRUCK DRIVEN BY DEFENDANT JUAN SALAZAR WITH THE
DEFENDANT KELLI BARRETT AS THE PASSENGER COMING FROM
THE BUILDING ON THE OPPOSITE SIDE OF THE PROPERTY FROM
WHERE THEY RENT SPACE. THE WITNESS SAW TWO WOODEN WING
BACK CHAIRS AND ONE WOODEN HIGH BACK CHAIR IN THE BACK
OF THE DEFENDANT'S TRUCK AS THE DEFENDANTS DROVE
THROUGH THE GATE AND LEFT THE PROPERTY. THE WITNESS THEN
WENT TO THE BUILDING AND SAW THE LOCKED [sic] REMOVED
FROM UNIT #B-82 WHICH IS RENTED BY THE COMPLAINANT, EDMON
CAREY DOWELL. THE WITNESS CONTACTED THE COMPLAINANT TO
COME TO THE STORAGE LOCATION. UPON ARRIVAL THE
COMPLAINANT FOUND THAT TWO MAHOGANY HIGH WING BACK
CHAIRS VALUED AT $400.00 EACH, ONE MAHOGANY HIGH BACK
OFFICE CHAIR VALUED AT $150.00, AND A THREE PIECE SERVICE
FOR EIGHT SET OF CRYSTAL STEM WARE VALUED AT $1,500.00 HAD
BEEN REMOVED FROM HIS STORAGE BUILDING. THE COMPLAINANT
TOLD THE AFFIANT THAT HE DID NOT GIVE THE DEFENDANTS
PERMISSION TO ENTER HIS STORAGE BUILDING NOR DID HE GIVE
PERMISSION TO THE DEFENDANTS TO TAKE HIS PROPERTY. THE
VALUE OF THE PROPERTY TAKEN IS $2,450.00. THE COMPLAINANT
DESIRES PROSECUTION.[4]

On the same page but immediately above the foregoing narrative in his warrant application,

Morrow included as identifying information the Plaintiff's correct name (prior to her marriage):

"Kelli Renee Barrett"; Plaintiff's correct race: "W"; Plaintiff's correct gender: "F"; and

Plaintiff's correct "SPN": "01346088". No information correctly identifying "Kelly Barrett"

appeared anywhere on Defendant Morrow's sworn affidavit or application for his arrest warrant

intended for "Kelly Barrett". Based upon the foregoing application that particularly described the

---

[4] *Id.* at 7-8.

Plaintiff, and which did not particularly describe in any fashion "Kelly Barrett", a felony warrant for the arrest of Plaintiff was issued by the magistrate.  As noted above, Fitch was arrested at her home in April 2001 by officers (not including Morrow) executing this warrant.

Following the eventual dismissal and expunction of the felony criminal charge, Plaintiff filed suit in the 234th Judicial District Court of Harris County, Texas.  Plaintiff notes that, prior to the removal of her claims to this Court, Parks offered the following testimony in an affidavit filed with the state court:

> I told the deputy sheriffs that I could identify the persons who had given me their names as Jesse Salazar and Kelly Barrett. I also gave the deputy sheriff the address for 'Kelly Barrett' as listed in Public Storage records as 11716 Clarkston #C, Katy, Texas 77429. I also gave him a description of 'Kelly Barrett' as 5'7" and 110 to 120 pounds. I never gave any law enforcement official any other name, address, or physical description for 'Kelly Barrett'.

> I also spoke to other deputy sheriffs and/or detectives who came to the facility as other thefts were reported. At this point I do not recall speaking to a N.D. Morrow, but I gave all deputy sheriffs and/or detectives that investigated the thefts the same information about Kelly Barrett and Jesse Salazar that I gave the first deputy sheriff.

> I was never asked by a deputy sheriff, detective, or any other law enforcement official to identify anyone as the persons I knew as Jesse Salazar or Kelly Barrett in a lineup, in a group of photographs, or any other method. I never gave a deputy sheriff, detective, or any other law enforcement official the name of Plaintiff Kelli Barrett Fitch, or her address, or her physical description, because I didn't even know she existed. I never identified Plaintiff Kelli Barrett Fitch in a lineup, in a group of photographs, or any other method, again because I did not even know she existed. I do not know why any law enforcement officer arrested Plaintiff Kelli Barrett Fitch for the theft at the facility, and did not ask anyone to arrest her. I did not even know that any law enforcement official had arrested anyone, much less Kelly Barrett Fitch, for the thefts at the facility until Plaintiff Kelli Barrett Fitch and her attorney came to the facility and told me about [sic] that she had been arrested.[5]

Plaintiff's suit was removed from state court to this Court on May 19, 2003.  Based on the allegations in Plaintiff's second amended petition, which contained almost none of the

---

[5] *Id.* at 10.

allegations recited above, this Court granted Defendant Morrow's motion to dismiss.   In particular, the Court stated the following:

> Plaintiffs have not alleged that Morrow intentionally withheld or misrepresented any information in his sworn application for the warrant.  Rather, Plaintiffs have very clearly alleged only that Morrow was *negligent* in failing to conduct further investigation prior to swearing out the warrant application.  Therefore, Plaintiffs' complaint shows on its face that it is barred by the holding in *Taylor v. Gregg*, and Fitch's § 1983 claim is dismissed.[6]

Plaintiff subsequently filed an amended complaint, which, partly in response to Defendant's assertion of qualified immunity, added a significant amount of detail to her factual allegations.  In addition, Plaintiff filed an extremely strongly-worded motion for partial reconsideration, which in essence demanded that this Court cease following the "preposterous 'breaks the causal chain' theory."[7]  After several pages of what can only be described as emotional venting, counsel for Plaintiff asserted the following:

> [T]he stark, significant and recurring question presented by the instant case is simply this: Just how long will the United States Court of Appeals for the Fifth Circuit, this Court, and other federal district courts bound by Fifth Circuit precedent, continue to openly ignore (if not consciously defy) the United States Supreme Court's express rejection of the "breaks the causal chain" theory ?[8]

Subsequently, Morrow filed a response to the motion for partial reconsideration and a motion to dismiss the amended complaint, specifically asserting that the breaks the causal chain principle applies in this case.[9]  This Court denied Plaintiff's motion for partial reconsideration, specifically holding that the breaks the causal chain principle was governing Fifth Circuit law.[10]  In the same order, this Court also denied Morrow's motion to dismiss, holding that the new allegations in

---

[6] *Memorandum and Order of 04 February 2004* (Doc. 10) (citing *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994) ("It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party.")); *see also Smith v. Gonzales*, 670 F.2d 522 (5th Cir. 1982) *and Hand v. Gary*, 838 F.2d 1420 (5th Cir. 1988).

[7] Doc. 11 at 9.

[8] *Id.* at 9-10.

[9] Doc. 14.

[10] *Memorandum and Order of 09 September 2004* (Doc. 21).

Plaintiff's amended complaint sufficed to state a § 1983 claim against Morrow for violation of her Fourth Amendment rights.  The Court specifically directed the parties to address the issue of whether the breaks the causal chain principle applies in this case (*i.e.*, as a factual matter) on summary judgment.[11]   Morrow subsequently filed his motion for summary judgment, and Plaintiff has responded.

## II.   LEGAL STANDARD

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987).  The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial.  Fed. R. Civ. P. 56(c).  The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts.

---

[11] *See, e.g.*, *Sullivan v. Chastain*, 2005 WL 354032 at *3 (W.D. Tex. Jan. 04, 2005) (denying officer's motion to dismiss based on breaks the causal chain principle and noting that the plaintiff's allegation that the officer "willfully and maliciously swore out a Complaint against [Plaintiff] without personal knowledge or probable cause" is "more properly examined on summary judgment, when both sides have had the opportunity to conduct discovery as to the actions of [the officer].").

*Anderson*, 477 U.S. at 256-57.  He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." *Id.* at 254.  A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252.

All reasonable inferences must be drawn in favor of the non-moving party.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574. 587-88 (1986), citing *United States v. Diebold*, 369 U.S. 654, 655 (1962).  Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.  Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor.  *Anderson*, 477 U.S. at 249.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*, 477 U.S. at 249-50.  Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence.  *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*).  The non-movant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.

1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

## III.    ANALYSIS

The salient and ultimately controlling issue in this case is whether or not Norman's alleged actions *caused* Plaintiff's injuries for purposes of § 1983.  Because Norman has made a showing that no genuine issue of material fact exists regarding the information he provided to the magistrate who ultimately issued the warrant for Plaintiff's arrest, and because Plaintiff has failed to marshal any evidence to indicate that Norman tainted the magistrate's deliberations in any way (*i.e.*, that Norman knowingly and recklessly misconstrued or withheld any relevant information), this Court holds that Norman is entitled to qualified immunity on Plaintiff's Fourth Amendment claim.

### A.    Framing the Qualified Immunity Analysis

The parties do not dispute the well established framework for conducting a qualified immunity analysis: "In undertaking a qualified immunity analysis, we must first determine whether the plaintiff has suffered a violation of his constitutional rights and, if so, whether a reasonable official should have known that he was violating the plaintiff's constitutional rights."[12]  Nor does there appear to be any dispute about the first prong of this analysis: Plaintiff asserts, and Morrow has not contested, that the arrest warrant in this case mistakenly named Plaintiff instead of the true suspect, Kelley Barrett, and that therefore a Fourth Amendment violation occurred.  Since Morrow has not seriously contested this assertion, and instead based

[12] *Murray v. Earle*, 405 F.3d 278, 285 (5th Cir. 2005).

his motion for summary judgment entirely on the second prong of the analysis and in particular on the breaks the chain of causation principle, this Court will assume without deciding that a Fourth Amendment violation occurred.   What remains to be decided, therefore, is whether Plaintiff can demonstrate that Morrow acted unreasonably, and in particular whether Morrow's actions proximately caused the damages she suffered.[13]   This Court finds that, (1) contrary to Plaintiff's assertion, the "breaks the chain of causation" principle remains governing law in this circuit; (2) in light of this principle, Plaintiff cannot demonstrate that Morrow's actions proximately caused the damages she suffered; and (3) accordingly, Morrow is entitled to qualified immunity and his motion for summary judgment should be granted.

**B.**      **Continuing Viability of the "Breaks the Chain of Causation" Principle**

Since this Court's last substantive order in this action, which denied Plaintiff's request to topple the "breaks the chain of causation" principle, the Fifth Circuit has reaffirmed the continuing viability of that principle on at least three occasions.[14]   In *Murray v. Earle*,[15] its most recent published opinion addressing the issue, the Fifth Circuit reversed a district court's denial of the defendants' motion for summary judgment on grounds of qualified immunity.   The plaintiff in *Murray* was an eleven-year-old girl suspected of killing an even younger child. Travis county detectives took the girl into custody and secured a confession.   This confession

---

[13] *See id.* ("We hold that, because [Plaintiff] cannot demonstrate that defendants acted unreasonably, in that their actions did not proximately cause the damages that she suffered, she may not maintain a Fifth Amendment cause of action against them under § 1983.").   Although *Murray* dealt with a Fifth Amendment claim, the Fifth Circuit's analysis in *Murray* is directly applicable to the present action.   As discussed below, *Murray* makes clear that (1) the "breaks the chain of causation" principle is governing law in this circuit; and (2) the issue of *causation* is subsumed into the second prong of the qualified immunity analysis, so that a plaintiff who fails to demonstrate that there is at least a question of fact as to whether the damages she suffered were proximately caused by a defendant cannot maintain an action against that defendant under § 1983.

[14] *Scribner v. Dillard*, 2005 WL 1199567 (5th Cir. May 20, 2005) (slip); *Murray v. Earle*, 405 F.3d 278 (5th Cir. 2005); *Shields v. Twiss*, 389 F.3d 142 (5th Cir. 2004).

[15] 405 F.3d 278 (5th Cir. 2005).

was proffered by the county attorneys at the girl's two criminal trials[16] and admitted by the state trial judge both times.  Both trials resulted in convictions.  Subsequently, the Texas Court of Appeals reversed the conviction, finding that the confession was inadmissible because the state law-enforcement authorities had violated Texas law by not taking the plaintiff before a magistrate prior to interrogating her.  The girl then brought suit in federal district court seeking damages from numerous individuals, including the Travis County district attorneys and detectives involved in her criminal prosecution, for violations of her Fifth Amendment right against self-incrimination and for state law civil conspiracy.  The district court denied the defendants' summary judgment motions for qualified immunity on the Fifth Amendment claims.

On appeal, the Fifth Circuit held that the girl was "in custody," that her confession was "involuntary," and that the confession's admission at trial "violated her Fifth Amendment right against self-incrimination."[17]  Nevertheless, the Fifth Circuit reversed the district court's denial of qualified immunity because it held that the state judge's ruling on the admissibility of the confession "constituted a superseding cause of [the plaintiff's] injury, relieving the defendants of liability under § 1983."[18]  In reaching this conclusion, the Fifth Circuit unambiguously reaffirmed the continuing viability of the "breaks the chain of causation" principle in this circuit.[19]

C.     **Applicability of the "Breaks the Chain of Causation" Principle to this Action**

The "breaks the chain of causation" principle therefore remains governing law, and the Court rejects Plaintiff's repeated insistence that this Court ignore that principle.  With respect to

---

[16] The state trial judge *sua sponte* ordered a retrial after the first conviction.
[17] 405 F.3d at 289.
[18] *Id.* at 293.
[19] *Id.* at 290-93.

whether the "breaks the chain of causation" principle applies to the specific circumstances of this case, the uncontested summary judgment evidence demonstrates, in relevant part, the following:

° As a detective in the Harris County Sheriff's Department ("HCSD"), one of Morrow's typical duties was to review offense reports prepared by other deputy sheriffs when a crime has been committed.[20]

° Morrow reviewed the offense report in this case, which had been prepared by Shinneman. That report described the suspect as (1) a white female; (2) named "Kelley Barrett"; (3) residing at "11715 Clarkston, Katy, Texas"; (4) age 22 to 28 years old; (5) with brown hair; (6) weighing between 110 and 120 pounds; and (7) being 5'7" to 5'9" in height.[21]

° Consistent with routine HCSD procedure, after Morrow reviewed the offense report a search for the suspect identified by Shinneman was done in the Justice Information Management System (JIMS).[22] JIMS is a computerized database that contains information on persons that have been previously handled by the criminal justice system in Harris County. Such persons are given a unique identification number called a "SPN number" and their JIMS file contains information such as their physical description, last known address, date of birth, etc.[23]

° The JIMS search brought up Plaintiff's SPN and record. Specifically, the JIMS search identified (1) a white female; (2) named "Kelli Renee Barrett"; (3) residing at "1714 Briarchester Dr., Katy, Texas"; (4) age 26 years old; (5) with brown hair; (6) weighing 125 pounds; and (7) being 5'1" in height.[24]

° Thus, the person identified in the JIMS file matched the person identified in the offense report in all salient respects except the following: (1) the spelling of the first name was slightly different ("Kelley" and "Kelly" in the offense report, versus "Kelli" in JIMS); (2) different street addresses, though both addresses were in Katy, Texas; (3) the suspect in the offense report was list as being 6 to 8 inches taller than the person in the JIMS file.

° Morrow concluded that "[t]hese minor discrepancies (height and address) were not enough to lead me to believe that Kelley Barrett and Kelli Renee Barrett was not one and the same person."[25]

---

[20] Doc. 25, Morrow Affidavit, at 1.
[21] *Id.* at 4; Doc. 25, Offense Report.
[22] Morrow testified that he no longer recalls whether he actually performed this search or whether someone else did it. Morrow Affidavit at 3-4.
[23] Morrow Affidavit at 2; Wilson Affidavit at 2.
[24] Doc. 25, JIMS Printout.
[25] Morrow Affidavit at 4.

° Based on his review of the offense report and the JIMS report, Morrow signed the probable cause affidavit that was included in the package that the District Attorney used to file charges against the plaintiff in this case, *i.e.* Kelli Renee Barrett Fitch.[26]

° As a matter of routine procedure, probable cause affidavits such as the one in this case can be prepared by the HCSD detective, by the District Attorney's office, or jointly by personnel in both offices.  Morrow "do[es] not remember who prepared the probable cause affidavit in this case, whether it was me or the District Attorney's office."   Nevertheless, as noted above, he did sign the completed affidavit.[27]

° At the time Morrow signed the affidavit he had never met the Plaintiff in this case, Kelli Renee Barrett Fitch.  Plaintiff has adduced no evidence to suggest that Morrow had any independent reason to know that Kelley Barrett and Kelli Barrett were not one and the same person.  Morrow asserts and the record indicates that the only information he based his decision to seek an arrest warrant on "was what was contained in the offense report and JIMS."   Indeed, Plaintiff is not alleging that Morrow actively "tainted" the information provided to the magistrate. Rather, her complaint is that Morrow's *inference* that she was the same person as the Kelley Barrett described in the offense report was objectively unreasonable, and that with respect to the magistrate Morrow failed to disclose "the basis, if any, for his 'inferences.'"[28]  In particular, according to Plaintiff, Morrow should have disclosed to the magistrate, *inter alia*, the discrepancies in height and residence addresses in the JIMS and the offense report.[29]

° Finally, Morrow testified as follows in his affidavit, and Plaintiff has adduced no evidence to rebut his assertions: "At no time did I ever bear any ill will or malice toward Kelli Barrett nor did I ever intentionally misstate any facts in the probable cause affidavit that I signed.  My total involvement in this case was to review the offense report, consult with the District Attorney's office, participate in the preparation of the probable cause affidavit, sign the probable cause affidavit which I in good faith believed to be accurate, and assist the District Attorney's office in assembling the documentation needed by the District Attorney's office to file appropriate criminal charges as the District Attorney saw fit.  I had no involvement in the actual arrest of Kelli Barrett or the preparation of the arrest warrant itself."[30]

In sum, the summary judgment record demonstrates that, with respect to the probable

cause affidavit, Officer Morrow was, at most, guilty of negligent omission: he failed to inform

---

[26] *Id*. at 3.
[27] *Id*. at 3, 5.
[28] Doc. 29 at 52.
[29] *Id.* at 49.
[30] Morrow Affidavit at 6.

the magistrate of the discrepancies between the description of the suspect in the offense report and the description of Plaintiff in her JIMS file, and consequently of his conclusion that these discrepancies were not sufficiently great to suggest that two different people (with many similar characteristics) were being described.   Regardless of how one might characterize Officer Morrow's logic—reasonable, unreasonable, somewhat reasonable—there is no question of fact in this case but that he acted in good faith—negligently, perhaps, but with no malicious intent. Indeed, Plaintiff does not even *allege* that Morrow acted maliciously or in bad faith.  Under these circumstances, the Court finds that Morrow is entitled to qualified immunity and that, accordingly, his motion for summary judgment must be granted.  Even assuming that there was a Fourth Amendment violation in this case and that Officer Morrow's logic was questionable and his omissions in the probable cause affidavit negligent, the Court finds that under prevailing Fifth Circuit precedent the "breaks the causal chain" principle still applies to this action.   The Court finds *Garris v. Rowland*, 678 F.2d 1264 (5th Cir. 1982), to be particularly instructive.[31]  In that case, the officer who submitted the probable cause affidavit committed substantially more glaring omissions and even several misrepresentations in its preparation.[32]  Nevertheless, after alluding to the then-novel "breaks the causal chain" principle, the Fifth Circuit concluded that because the officer's actions were at most negligent and not malicious or in bad faith the officer was entitled to qualified immunity:

---

[31] Indeed, the Court specifically instructed the parties to address the applicability of *Garris* to this action, should Morrow elect to assert that the "breaks the chain of causation" principle applied herein. Doc. 21 at 14. In his motion for summary judgment Morrow did assert that that principle applies and did reference *Garris*.  For her part, Plaintiff submitted a lengthy brief and did cite *Garris* and discuss the "breaks the chain of causation" principle at length. Plaintiff wholly failed, however, to provide any discussion as to why *Garris* is distinguishable from this action and / or why, based on governing Fifth Circuit precedent, *Garris* should not control the qualified immunity issue before this Court.

[32] 678 F.2d at 1267-68 (In the affidavit…Rowland stated the facts as he knew them, but made the crucial mistake of misrepresenting certain material facts as being within his personal knowledge….Based upon the misrepresentations in the warrant and unaware that material facts contained within were the product of fourth-hand hearsay, a Tarrant County Magistrate issued a warrant for Garris' arrest.").

> …[I]n this case, the jury findings indicate that Rowland acted negligently, not intentionally or recklessly.   Accordingly, neither plaintiff's facial or subfacial challenge to the affidavit warrants a finding that Officer Rowland himself is liable for its deficiencies so as to deny him qualified immunity.[33]

The Court finds that the same conclusion is required in this action.  The summary judgment record establishes that Officer Morrow's actions were at most negligent.  Like the substantially more culpable officer in *Garris*, Officer Morrow signed the probable cause affidavit in good faith and sent it to the District Attorney's office for review and approval.  The affidavit was ultimately put before an independent magistrate.  Under these circumstances, the Court finds that the "breaks the chain of causation" principle applies and that, therefore, Officer Morrow is entitled to qualified immunity.  The motion for summary judgment is granted.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Officer Morrow is entitled to qualified immunity and that his motion for summary judgment should be granted.  Final judgment is entered in favor of Defendant.

**SIGNED** at Houston, Texas, this 1st day of August, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[33] *Id.* at 1274.